**KILPATRICK TOWNSEND & STOCKTON LLP**
Lisa Pearson (LP 4916)
Robert Potter (RP 5757)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COTY INC., CALVIN KLEIN TRADEMARK TRUST, CALVIN KLEIN, INC., CALVIN KLEIN COSMETIC CORPORATION, HUGO BOSS TRADE MARK MANAGEMENT GMBH & CO. KG, and MARC JACOBS TRADEMARKS, LLC <br><br> Plaintiffs, <br><br> v. <br><br> COSMOPOLITAN COSMETICS INC., EUGENE ABRAHAM, WILLIAM GOLD, and COSMETIC MERCHANDISE CORP. d/b/a COSMETIC MARKET <br><br> Defendants. | 18 Civ. 11145 (LTS) (HBP) <br><br><br> <u>**FIRST AMENDED COMPLAINT**</u> |

Plaintiffs Coty Inc., Calvin Klein Trademark Trust, Calvin Klein, Inc., Calvin Klein Cosmetic Corporation, HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks, LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, for their complaint allege, based on their knowledge, information and belief formed after a reasonable inquiry, as follows:

1

## SUBSTANCE OF THE ACTION

1.      Plaintiff Coty Inc. manufactures, distributes and sells highly successful lines of prestige fragrance products under its own proprietary trademarks and under licensed marks, including CALVIN KLEIN,  HUGO BOSS, and MARC JACOBS pursuant to exclusive fragrance licenses (collectively, "Plaintiffs' Fragrances").

2.      To ensure the uniformly high quality of Plaintiffs' Fragrances, Coty employs a proprietary coding system that is critical to Plaintiffs' quality assurance, anti-counterfeiting and anti-theft efforts.  The codes applied to each genuine unit of Plaintiffs' Fragrances at the time of manufacture help Plaintiffs ensure that the consuming public receives only safe and genuine topical fragrance products. Without their codes, Plaintiffs' Fragrances are no longer traceable by Coty and are often commingled with counterfeit fragrances manufactured by a third party ("Unauthorized Fakes") or stolen fragrances.  Moreover, fragrances lacking a code may themselves be Unauthorized Fakes or stolen products

3.      Defendants have violated Plaintiffs' trademark rights by selling CALVIN KLEIN, HUGO BOSS, MARC JACOBS, and other fragrances bearing trademarks owned and/or licensed by Plaintiffs from which the production code has been removed.  Regardless of whether Defendants' fragrances were originally manufactured by Coty or are Unauthorized Fakes, they infringe Plaintiffs' trademark rights both because they are materially different from genuine Plaintiffs' Fragrances intended for retail sale and because they are beyond the reach of Plaintiffs' product integrity and quality controls.  *See Zino Davidoff SA v. CVS Corp.*, No. 06 CV 15332 (KMK), 2007 WL 1933932 (S.D.N.Y. July 2, 2007), *aff'd*, 571 F.3d 238 (2d Cir. 2009); *Davidoff & Cie SA  v. PLD Int'l Corp.*, 56 U.S.P.Q.2d 1753 (S.D. Fla. 2000), *aff'd*, 263 F.3d 1297 (11th Cir. 2001).

2

4.      Defendants' sale of decoded units of CALVIN KLEIN, HUGO BOSS, MARC JACOBS, and other of Plaintiffs' Fragrances is a deliberate effort to trade on Plaintiffs' fame and goodwill and damage the valuable trademark rights that Plaintiffs have spent decades developing and protecting.  Defendants' actions are causing irreparable harm by creating consumer confusion and by tarnishing and diluting Plaintiffs' famous trademarks.

5.      Plaintiffs Calvin Klein Trademark Trust, Calvin Klein Cosmetic Corporation, HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks, LLC bring claims for trademark infringement and trademark counterfeiting under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); all Plaintiffs bring claims for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under common law.  Plaintiffs seek permanent injunctive relief, an accounting, treble profits, treble damages, compensatory damages, recovery of their costs and attorneys' fees and other relief authorized by the Lanham Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, under Sections 1331, 1338(a), 1338(b) and 1367 of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b), 1367 and under principles of pendent jurisdiction.

7.      This Court has personal jurisdiction over Defendants because Defendants are businesses registered and domiciled in the State of New York and the infringing products at issue are and were sold within the State.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

9.      Coty Inc. ("Coty") is a corporation organized and existing under the laws of Delaware, with a principal place of business at 350 Fifth Avenue, New York, New York 10018. Coty manufactures and distributes fragrances under its own proprietary marks and under marks owned by third parties such as CALVIN KLEIN, HUGO BOSS, and MARC JACOBS pursuant to exclusive fragrance licenses (collectively, "Coty Fragrance Marks").

10.     Calvin Klein Trademark Trust ("CKTT") is a business trust organized and existing under the laws of Delaware with an address, c/o Calvin Klein, Inc., at 205 West 39th Street, New York, New York 10018.  CKTT's trustee, Wilmington Trust Company, is a Delaware corporation with a business address at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890.  CKTT is the record owner of the CALVIN KLEIN trademark for apparel products and fragrances (among other marks) in the U.S.

11.     Calvin Klein, Inc. ("CKI") is a corporation organized and existing under the laws of New York with a principal place of business at 205 West 39th Street, New York, New York 10018.  CKI, as the beneficial owner of the CALVIN KLEIN trademark for apparel products and fragrances (among other marks) in the U.S., has entered into a license agreement (as to which Calvin Klein Cosmetic Corporation and Coty are currently licensees), for the manufacture, distribution, sale, advertisement and promotion of the CALVIN KLEIN trademark.

12.     Calvin Klein Cosmetic Corporation (together with CKTT and CKI, "Calvin Klein") is a corporation organized and existing under the laws of Delaware with a principal place of business at 350 Fifth Avenue, New York, New York 10018.  Calvin Klein Cosmetic Corporation, which is indirectly owned by Coty, is the owner of the registered EUPHORIA and

DEEP EUPHORIA trademarks for fragrances (among other marks) in the U.S., subject to the terms of a fragrance license from CKI.

13.     HUGO BOSS Trade Mark Management GmbH & Co. KG ("Hugo Boss") is a limited partnership organized and existing under the laws of Germany and having its principal place of business at Dieselstrasse 12, Metzingen 72555, Germany.  Hugo Boss is the owner of the federally registered HUGO BOSS, BOSS, HUGO BOSS, BOSS HUGO BOSS, BOSS BOTTLED, and BOSS THE SCENT marks as well as registered design marks for relevant bottle designs (among other marks) in the U.S.

14.     Marc Jacobs Trademarks, LLC ("Marc Jacobs") is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 72 Spring Street, 2nd Floor, New York, New York 10012.  Marc Jacobs is the owner of the federally registered MARC JACOBS and DAISY MARC JACOBS marks as well as registered design marks for relevant packaging designs (among other marks) in the U.S.

15.     Upon information and belief, Cosmopolitan Cosmetics Inc. is a corporation organized and existing under the laws of New York with a place of business located at 145 51st Street, Brooklyn, New York 11232.  Cosmopolitan Cosmetics Inc. sells fragrances and other products to retailers or other distributors, and transacts business in this judicial district and throughout the United States.

16.     Upon information and belief, Defendant Eugene Abraham is the Chief Executive Officer of Cosmopolitan Cosmetics Inc., has an ownership interest in Cosmopolitan Cosmetics Inc., and otherwise controls the acts of Cosmopolitan Cosmetics Inc., including the acts complained of herein, and is directly responsible for or has otherwise orchestrated Cosmopolitan

Cosmetics Inc.'s unlawful activities.  Upon information and belief, Mr. Abraham does business

at 145 51st Street, Brooklyn, New York 11232.

17.     Upon information and belief, Defendant William Gold (with Cosmopolitan

Cosmetics Inc. and Defendant Abraham, collectively, "Cosmopolitan") is the President of

Cosmopolitan Cosmetics Inc. and otherwise controls the acts of Cosmopolitan Cosmetics Inc.,

including the acts complained of herein, and is directly responsible for or has otherwise

orchestrated Cosmopolitan Cosmetics Inc.'s unlawful activities.  Upon information and belief,

Mr. Gold does business at 145 51st Street, Brooklyn, New York 11232.

18.     Upon information and belief, Cosmetic Merchandise Corp. d/b/a Cosmetic

Market ("Cosmetic Market," with Cosmopolitan, "Defendants") is a corporation organized and

existing under the laws of New York with a place of business located at 15 East 37th Street, New

York, New York 10016.  Cosmetic Market sells fragrances and other products direct to

consumers and/or other retailers and distributors, and transacts business in this judicial district

and throughout the United States.

### FACTS SUPPORTING PLAINTIFFS' REQUESTED RELIEF

CALVIN KLEIN FRAGRANCES

19.     The CALVIN KLEIN brand was created in 1968 by Plaintiff Calvin Klein, Inc.'s

predecessor in interest (namely the partnership Calvin Klein Company) and has become one of

the world's most recognized and respected brands for clothing and other high-quality goods,

including a line of popular fragrance products marketed under the CALVIN KLEIN house mark

(the "Calvin Klein Fragrances").  Calvin Klein Cosmetic Corporation, together with its indirect

owner Coty, has the exclusive right to manufacture, sell and distribute Calvin Klein Fragrances.

Calvin Klein Fragrances are renowned for their high quality, and the line is one of the top-selling fragrance lines in the U.S.

20.     Calvin Klein Fragrances have been distributed in interstate commerce throughout the U.S., including in this judicial district, for many years.  For example, Calvin Klein launched the OBSESSION women's fragrance in 1985, the ETERNITY women's fragrance in 1988, and the EUPHORIA women's fragrance in 2005.

21.     Calvin Klein Fragrances are identified and distinguished by the use of the house mark CALVIN KLEIN and product marks such as EUPHORIA and DEEP EUPHORIA as well as associated bottle and packaging designs (collectively, the "Calvin Klein Marks").  Because of Calvin Klein's exclusive and extensive use of the Calvin Klein Marks, the marks have acquired enormous value, certain of the marks have become famous among the consuming public and trade, and all are recognized as identifying and distinguishing Calvin Klein exclusively and uniquely as the source of products sold under the marks.

22.     In addition to its valuable common-law rights in the mark CALVIN KLEIN, Calvin Klein Trademark Trust is the record owner and Calvin Klein, Inc. is the beneficial owner of numerous U.S. trademark registrations for the Calvin Klein Marks for, *inter alia*, perfume and cologne, including Reg. No. 1,226,396 for CALVIN KLEIN.

23.     In addition to its valuable common-law rights in various product marks identifying CALVIN KLEIN fragrance products, Calvin Klein Cosmetic Corporation is the record owner of numerous U.S. trademark registrations for such product marks for, *inter alia*, perfume, cologne, and eau de toilette, including Reg. No. 3,786,226 for EUPHORIA and Reg. No. 5,187,925 for DEEP EUPHORIA. True and correct copies of the cited registrations from the U.S. Patent and Trademark Office are attached as Exhibit A.

7

24.     All of the foregoing registrations are valid, subsisting, and in full force and effect. Moreover, as the CALVIN KLEIN and EUPHORIA marks are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, they serve as conclusive evidence of Calvin Klein's ownership of and exclusive right to use the associated marks in commerce on or in connection with all of the goods identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

HUGO BOSS FRAGRANCES

25.     The HUGO BOSS brand was created in Germany in 1924 by Hugo Boss and has become one of the world's most recognized and respected brands for clothing and other high-quality goods, including a line of popular fragrance products marketed under the HUGO BOSS house mark (the "Hugo Boss Fragrances").  Coty has the exclusive right to manufacture, sell and distribute Hugo Boss Fragrances.  Hugo Boss Fragrances are renowned for their high quality, and the line is one of the top-selling fragrance lines in the U.S.

26.     Hugo Boss Fragrances have been distributed in interstate commerce throughout the United States, including in this judicial district, for many years.  For example, Hugo Boss launched HUGO BOSS HUGO men's fragrance in the U.S. in 1995 and BOSS BOTTLED men's fragrance in 1998.

27.     Hugo Boss Fragrances are identified and distinguished by the use of the HUGO BOSS house mark and product marks such as BOSS HUGO BOSS, BOSS BOTTLED and BOSS THE SCENT as well as associated bottle and packaging designs (collectively, the "Hugo Boss Marks").  Because of Hugo Boss's exclusive and extensive use of the Hugo Boss Marks, the marks have acquired enormous value, certain of the marks have become famous among the

consuming public and trade, and all are recognized as identifying and distinguishing Hugo Boss exclusively and uniquely as the source of products sold under the marks.

28.     In addition to its valuable common-law rights in the Hugo Boss Marks, Hugo Boss owns numerous U.S. trademark registrations for those marks for, *inter alia*, perfume and eau de toilette, including Reg. No. 1,429,737 for BOSS; Reg. No. 1,853,427 for HUGO HUGO BOSS (stylized); Reg. No. 2,399,198 for BOSS HUGO BOSS (stylized); Reg. No. 3,722,539 for BOSS BOTTLED; Reg. No. 4,434,445 for Design; Reg. No. 5,052,016 for BOSS HUGO BOSS and Design; Reg. No. 5,139,547 for BOSS and Design; and Reg. No. 5,557,827 for BOSS THE SCENT. True and correct copies of the cited registrations from the U.S. Patent and Trademark Office are attached as Exhibit B.

29.     All of the foregoing registrations are valid, subsisting, and in full force and effect.  Moreover, as the BOSS, HUGO HUGO BOSS (stylized), BOSS HUGO BOSS (stylized), and BOSS BOTTLED registrations are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, they serve as conclusive evidence of Hugo Boss's ownership of these marks and of its exclusive rights to use the marks in commerce on or in connection with all of the goods identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

MARC JACOBS FRAGRANCES

30.     The MARC JACOBS brand was created in 1986 by Marc Jacobs and has since become one of the world's most recognized and respected brands for clothing and other high-quality goods, including a line of popular fragrance products marketed under the MARC JACOBS house mark (the "Marc Jacobs Fragrances"). Coty has the exclusive right to

manufacture, sell and distribute Marc Jacobs Fragrances.  Marc Jacobs Fragrances are renowned

for their high quality, and the line is one of the top-selling fragrance lines in the U.S.

31.     Marc Jacobs Fragrances have been distributed in interstate commerce throughout

the United States, including in this judicial district, for many years.  For example, Marc Jacobs

launched MARC JACOBS women's fragrance in the U.S. in 2001 and DAISY MARC JACOBS

fragrance in 2007.

32.     Marc Jacobs Fragrances are identified and distinguished by the use of the MARC

JACOBS house mark and product marks such as DAISY MARC JACOBS as well as associated

bottle and packaging designs (collectively, the "Marc Jacobs Marks").  Because of Marc

Jacobs's exclusive and extensive use of the Marc Jacobs Marks, the marks have acquired

enormous value, certain of the marks have become famous among the consuming public and

trade, and all are recognized as identifying and distinguishing Marc Jacobs exclusively and

uniquely as the source of products sold under the marks.

33.     In addition to its valuable common-law rights in the Marc Jacobs Marks, Marc

Jacobs owns numerous U.S. trademark registrations for those marks for, *inter alia*, perfumery

and fragrances, including Reg. No. 2,771,932 for MARC JACOBS; Reg. No. 3,791,512 for

DAISY MARC JACOBS and Design; Reg. No. 4,043,659 for Bottle Design; and Reg. No.

4,873,868 for DAISY MARC JACOBS. True and correct copies of the cited registrations from

the U.S. Patent and Trademark Office are attached as Exhibit C.

34.     All of the foregoing registrations are valid, subsisting, and in full force and effect.

Moreover, as the MARC JACOBS, DAISY MARC JACOBS and Design, and Bottle Design

registrations are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, they

serve as conclusive evidence of Marc Jacobs's ownership of these marks and of its exclusive

rights to use the marks in commerce on or in connection with all of the goods identified in the

registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

PRODUCTION CODE

35.    Plaintiffs exercise strict quality control over the production of Plaintiffs'

Fragrances, as well as over their bottling, their completed packaging, and their distribution.

Plaintiffs have established and follow legitimate, substantial, and non-pretextual quality control

procedures for their fragrance products to ensure the uniformly high quality of their products and

ultimately the value of their brands. To this end, each unit of DEEP EUPHORIA, HUGO MAN,

BOSS BOTTLED, BOSS THE SCENT, and DAISY MARC JACOBS (among other Plaintiffs'

Fragrances) bears a unique code used as a quality assurance, anti-counterfeiting and anti-theft

measure (the "Production Code").

36.    For example, the Production Code permits Coty and its licensors to take

corrective action in the event a product defect should arise.  The Production Code indicates,

among other things, the day, month and year in which the fragrance unit was manufactured.  In

addition, this coding system provides full traceability from the moment the unit is produced to

the point of consumer purchase, facilitating corrective action or targeted recalls in the event of

any quality issue.  Further, a consumer who experiences any quality issues with a particular unit

can provide that unit's Production Code to Plaintiffs, who can then provide detailed information

about the formulation of the product to assist in rectifying any allergic reaction or other health or

safety issue, as well as to pinpoint and resolve any production problems.

37.    The Production Code also serves as an anti-counterfeiting device.  It assists

Plaintiffs in identifying Unauthorized Fakes and removing them from the marketplace.  As

counterfeiters are generally unable or unwilling to apply costly individual codes to their fake

fragrance products, Unauthorized Fakes of Plaintiffs' Fragrances typically bear the same bogus code on multiple units or lack any code at all. As a result, by examining the Production Code (or lack thereof) affixed to a given fragrance product, Plaintiffs (as well as Customs officials, law enforcement, private investigators and retailers) are often able to identify Unauthorized Fakes quickly and easily and to take the actions necessary to remove them from the market.

DECODED FRAGRANCES

38.     At times, unscrupulous third parties remove, obscure, sticker over or otherwise obliterate the Production Codes on fragrances bearing Coty Fragrance Marks ("Decoded Fragrances"). Decoded Fragrances may be Unauthorized Fakes or they may be products originally manufactured by Coty that have been stolen or otherwise diverted from Coty's authorized distribution channels. Plaintiffs vigorously object to the decoding of their fragrances because it makes it impossible for them to guarantee the authenticity or quality of their products.

39.     Decoded Fragrances are decoded with varying degrees of finesse. Often, the Production Codes on these bottles and boxes are cut off, abraded, or otherwise mutilated, giving the products a damaged appearance. In some cases, however, the Production Code is removed with chemicals, in a manner that does not create a damaged appearance. Plaintiffs' Fragrances that have been chemically decoded are virtually indistinguishable from Unauthorized Fakes with no Production Code.

40.     Decoded Fragrances are generally sold by distributors who are not authorized to sell these fragrance products in the United States, and are frequently found in mixed shipments with Unauthorized Fakes and/or stolen products. Upon information and belief, the products are decoded to conceal the identity of the seller who is diverting the products outside of authorized

distribution channels and/or to facilitate the introduction of Unauthorized Fakes into the marketplace.

41.     At a minimum, Decoded Fragrances are materially different from genuine Plaintiffs' Fragrances because, *inter alia*, they are not date-stamped and are not subject to Plaintiffs' ongoing quality assurance programs.  Because the quality of fragrance products deteriorate over time, and because consumers expect consistent high quality fragrance products from Plaintiffs, these differences are obviously significant to the consuming public.

42.     Plaintiffs do not countenance the sale of Decoded Fragrances.  In many instances the removal of the Production Code and resulting mutilation of genuine product packaging degrades the products.  In addition, the absence of the Production Code significantly interferes with Plaintiffs' quality assurance, anti-counterfeiting and anti-theft programs by hindering Plaintiffs' ability to trace the products, thereby potentially endangering the public by preventing Plaintiffs from identifying Unauthorized Fakes, resolving quality problems, and recalling defective products.  Further, the absence of the Production Code and/or the mutilation of the packaging are each in and of themselves material differences from the authorized fragrances that are distributed by Coty in the U.S.

43.     In *Davidoff & Cie SA v. PLD Int'l Corp.*, 56 U.S.P.Q.2d 1753 (S.D. Fla. 2000), aff'd, 263 F.3d 1297 (11th Cir. 2001), and *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009), cases involving the very same type of product coding system involved in this case, the Courts of Appeals for the Second and Eleventh Circuits held that the sale of decoded Coty fragrances violates the Lanham Act because, even if they were originally manufactured by Coty, they are materially different from  the genuine product.  Accordingly,  Decoded Fragrances are, at a minimum, infringing products under U.S. trademark law.

44.     Further, regardless of whether the Decoded Fragrances products were at one time genuine products manufactured by Coty or are Unauthorized Fakes, the registered trademarks that appear on the Decoded Products are "counterfeit marks" within the meaning of Section 45 of the Lanham Act, 15 USC § 1127, as established by such cases as *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 900 (9th Cir.1997) ("When an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached."), and *Cartier v. Aaron Faber, Inc.,* 512 F. Supp. 2d 165, 169 (S.D.N.Y. 2007) ("A product is deemed counterfeit if it contains an original mark that is likely to deceive the public as to its origin.  . . .  The watches modified and sold by [defendant] therefore constitute 'counterfeit' merchandise for purposes of the Lanham Act.") .

DEFENDANTS' SALE OF DECODED FRAGRANCES

45.     Defendants are retail and wholesale distributors of Decoded Fragrances. Specifically, Defendants have, at a minimum, distributed, sold, and/or offered for sale decoded units of the fragrances CALVIN KLEIN DEEP EUPHORIA, HUGO BOSS BOTTLED, HUGO BOSS THE SCENT, and DAISY MARC JACOBS.

46.     The full extent of Defendants' unlawful activity is not presently known, but upon information and belief, Defendants have also distributed, sold, and/or offered for sale other fragrances that infringe the trademark rights of Coty and its licensors and that unfairly compete with Plaintiffs' Fragrances, including Decoded Fragrances in Coty's LACOSTE and TIFFANY fragrance lines.

***Defendant Cosmetic Market***

47.     In or about November 2017, and again in June 2018, Plaintiffs obtained decoded

units of DAISY MARC JACOBS fragrance from Defendant Cosmetic Market through its retail outlet on 15 East 37th Street in New York City.   Representative images of the packaging and receipts from the Decoded Fragrances purchased from Cosmetic Market in November 2017 and June 2018 are attached hereto as Exhibit D.

48.     Plaintiffs' counsel sent a letter to Cosmetic Market on June 29, 2018, identifying the foregoing Decoded Fragrances, advising that the sale of Decoded Fragrances is unlawful, and providing Cosmetic Market with the tools necessary to identify such fragrance products as well as a list of all Coty fragrance brands at that time.  Having received no response from Cosmetic Market, Plaintiffs' counsel followed up with another letter on July 16, 2018.  Copies of Plaintiffs' initial and follow-up letters are attached hereto as Exhibit E.

49.     Cosmetic Market, through its owner Moshe Nakash, responded to Plaintiffs' counsel by phone on July 24, 2018, and identified Defendant Cosmopolitan as Cosmetic Market's exclusive source of Coty (and other) fragrances, including the decoded units of DAISY MARC JACOBS fragrance product identified in Plaintiffs' letter, and provided representative invoices in support.  Copies of the invoices provided to Plaintiffs by Cosmetic Market (on July 24, 2018 and subsequently) are attached hereto as Exhibit F.

50.     On behalf of Cosmetic Market, Mr. Nakash also agreed to allow Coty to inspect all Coty fragrance products in its inventory.  On August 22, 2018, Coty's Chief Security Officer, accompanied by Plaintiffs' counsel, inspected approximately 215 units of Coty fragrance products in Cosmetic Market's inventory and confirmed that they included decoded units of DEEP EUPHORIA; HUGO MAN; BOSS BOTTLED; BOSS THE SCENT; and EAU DE LACOSTE.  Mr. Nakash refused to surrender these Decoded Fragrances to Coty or Plaintiffs' counsel, but Plaintiffs' counsel explained that these were evidence in a potential lawsuit and Mr.

Nakash agreed to segregate them and store them carefully pending resolution of this dispute. Photographs of these Decoded Fragrances, taken during the inspection, are attached as Exhibit G. Mr. Nakash identified Defendant Cosmopolitan as the source of all of these Decoded Fragrances.

### Defendant Cosmopolitan

51.    Defendant Cosmopolitan has been identified more than once as the source of Decoded Fragrances found through Coty's enforcement efforts.  In May 2016, a fragrance retailer in Texas identified Cosmopolitan as the source of at least one decoded unit of Coty's VERA WANG LOVESTRUCK fragrance found in the retailer's inventory, and as the suspected source of at least one decoded unit of CALVIN KLEIN EUPHORIA fragrance in its inventory as well.

52.    At that time, Coty's counsel sent a letter to Cosmopolitan dated June 23, 2016, identifying the Decoded Fragrances it was reported to have sold, advising that the sale of such Decoded Fragrances is unlawful, and providing Cosmopolitan with the tools necessary to identify such fragrances as well as a list of all Coty fragrance brands at that time.  Cosmopolitan, through Defendant William Gold, responded to Coty's counsel by phone to deny selling any Decoded Fragrances, maintaining that Cosmopolitan sourced genuine, coded VERA WANG LOVESTRUCK fragrances from a "direct Coty account" but refusing to identify that alleged "account."  On August 26, 2016, Coty's counsel sent Cosmopolitan a letter memorializing these representations, and otherwise reserving all rights. Due to the small number of units at issue, Coty did not pursue its legal remedies at that time but expressly advised Cosmopolitan that, now that Cosmopolitan had the tools to identify Unauthorized Fakes and Decoded Fragrances, its continued sales of such fragrances would be made at its peril.

53.     Although Cosmopolitan has been on actual notice of Coty's objections to its sale of Decoded Fragrances since June 2016, Cosmopolitan has knowingly and willfully continued its unlawful practice of selling Decoded Fragrances.

54.     On September 13, 2018, after Cosmetic Market identified Cosmopolitan as the source of all of the Decoded Fragrances found in its inventory, Plaintiffs' counsel sent another demand letter to Cosmopolitan.  This letter, which enclosed Coty's prior correspondence from 2016, advised Cosmopolitan that it had again been identified as the source of multiple Decoded Fragrances, including DEEP EUPHORIA, HUGO MAN, BOSS BOTTLED, and BOSS THE SCENT.  Plaintiffs' September 13 letter made associated requests that Cosmopolitan cease all such sales, allow inspection of its inventory of Coty fragrances, and provide Plaintiffs with source and sales information for all decoded or otherwise infringing Coty fragrances.  Once again, Plaintiffs' September 13 letter included a list of all current Coty fragrance brands.  Having received no reply, Plaintiffs' counsel sent Cosmopolitan a follow-up letter on September 21. Copies of Plaintiffs' September 13 and September 21, 2018 letters are attached hereto as Exhibit H.

55.     Despite subsequent communications between Plaintiffs' counsel and Cosmopolitan's representative, Cosmopolitan has not provided the reasonable source and sales information Plaintiffs have asked for nor otherwise complied with Plaintiffs' requests.

56.     In or about December 2018, Coty made test purchases confirming that Groupon.com was selling multiple decoded units of TIFFANY & CO. eau de parfum through its website.  On February 13, 2019, after Plaintiffs filed their initial complaint in this action, Groupon.com—in response to a demand letter from Coty—identified Cosmopolitan as the source of the decoded units of TIFFANY & CO. eau de parfum Coty had purchased through that

website.  Upon information and belief, Cosmopolitan has sold and/or is selling decoded units of other Plaintiffs Fragrances beyond those specifically identified herein, including through the website Groupon.com.

57.     Upon information and belief, Cosmopolitan is itself tampering with Plaintiffs' Fragrances to remove their codes or has instructed third parties to do so.

**_Both Defendants_**

58.     By selling Decoded Fragrances, Defendants impair Plaintiffs' quality control and anti-counterfeiting programs, and deprive Plaintiffs of the ability to maintain the prestige and reputation of the brands sold under Coty Fragrance Marks.

59.     Defendants' Decoded Fragrances are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that these unlicensed and unauthorized products are authorized and backed by Plaintiffs, when in fact they are not.  Purchasers and prospective purchasers viewing Defendants' Decoded Fragrances and perceiving a defect, lack of quality, or any other irregularity are likely to attribute them mistakenly to Plaintiffs.  The likelihood of confusion, mistake and deception engendered by Defendants' unauthorized products is causing irreparable harm to Plaintiffs' reputation and goodwill and impairing the efficacy of their anti-counterfeiting efforts.

60.     In addition, due to the nature of the product at issue here, a topical cosmetic, Defendants' sale of Decoded Fragrances poses a serious risk to public health and safety.  By causing such a likelihood of confusion, mistake, deception and potential public health risk, Defendants are inflicting irreparable harm to the public health and welfare.

61.     Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

**FIRST CLAIM FOR RELIEF**
**FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING UNDER**
**THE LANHAM ACT (15 U.S.C. § 1114)**
***(on behalf of Plaintiffs Calvin Klein Trademark Trust, Calvin Klein Cosmetic Corporation,***
***HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks,***
***LLC)***

62.     Plaintiffs repeat and re-allege each and every allegation set forth above, and incorporate them herein by reference.

63.     CKTT owns, *inter alia,* the following federal trademark registration for perfume and eau de toilette:  Reg. No. 1,226,396 for CALVIN KLEIN, a copy of which is included in Exhibit A.

64.     CKCC owns, *inter alia,*  the following federal trademark registrations for perfume and eau de toilette:  Reg. No. 3,786,226 for EUPHORIA and Reg. No. 5,187,925 for DEEP EUPHORIA, copies of which are included in Exhibit A.

65.     Hugo Boss owns, *inter alia,* the following federal trademark registrations for perfume and eau de toilette: Reg. No. 1,853,427 for HUGO BOSS (stylized); Reg. No. 2,399,198 for BOSS HUGO BOSS (stylized); Reg. No. 3,722,539 for BOSS BOTTLED; Reg. No. 4,434,445 for Bottle Design; Reg. No. 5,052,016 for BOSS HUGO BOSS and Bottle Design; Reg. No. 5,139,547 for BOSS and Bottle Design; and Reg. No. 5,557,827 for BOSS THE SCENT, copies of which are included in Exhibit B.

66.     Marc Jacobs owns, *inter alia,* the following federal trademark registrations for perfume and eau de toilette: Reg. No. 2,771,932 for MARC JACOBS; Reg. No. 3,791,512 for DAISY MARC JACOBS and Design, Reg. No. 4,043,659 for Bottle Design; and Reg. No. 4,873,868 for DAISY MARC JACOBS, copies of which are included in Exhibit C.  The marks shown in Exhibits A, B, and C are collectively referred to as "Plaintiffs' Federally Registered Marks."

19

67.    The absence of the Production Code and/or mutilation of the packaging of Plaintiffs' Fragrances, including fragrances bearing the marks specifically identified above, renders them materially different from Plaintiffs' Fragrances authorized for sale in the U.S., and such products are not genuine.

68.    Defendants' unauthorized advertising, distribution, and sale of Decoded Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, is likely to cause confusion, mistake or deception as to the source or sponsorship of these products.

69.    As a result of Defendants' unauthorized advertising, distribution, and sale of Decoded Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, the public is likely to believe that these goods have been manufactured and/or approved by the respective owners of those marks and are subject to their quality control measures.

70.    Defendants' unauthorized advertising, distribution, and sale of Decoded Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, is willful, intended to reap the benefit of the goodwill symbolized by those marks, and constitutes trademark counterfeiting and/or trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

71.    The aforesaid conduct of Defendants is causing irreparable injury to Plaintiffs CKCC, CKTT, Hugo Boss, and Marc Jacobs and to their respective goodwill and reputation, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law, injunctive relief is warranted considering the

hardships between Plaintiffs and Defendants, and the public interest would be served by enjoining Defendants' sale of infringing fragrances.

**SECOND CLAIM FOR RELIEF**
**FOR FEDERAL UNFAIR COMPETITION, FALSE DESCRIPTION**
**AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**
*(on behalf of all Plaintiffs)*

72.      Plaintiffs repeat and re-allege each and every allegation set forth above, and incorporate them herein by reference.

73.      Defendants' unauthorized advertising, distribution and sale of Decoded Fragrances bearing the Calvin Klein Marks, the Hugo Boss Marks and the Marc Jacobs Marks, or confusingly similar variants thereof, constitutes a false designation of origin and a false description or representation that Plaintiffs certify the quality and authenticity of such products, when in fact they do not, and is thereby likely to deceive the public.

74.      Defendants are making unauthorized use of marks owned by Plaintiffs and exclusively licensed to Coty for fragrance products with full knowledge that those marks are associated with and exclusively designate Plaintiffs' fragrance products.  Defendants' acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with these marks.

75.      Defendants' unauthorized advertising, distribution and sale of Decoded Fragrances violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

76.      The aforesaid conduct of Defendants is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law, injunctive relief is warranted considering the hardships between Plaintiffs and Defendants, and the public interest would be served by enjoining Defendants' sale of infringing fragrances.

### THIRD CLAIM FOR RELIEF FOR
### COMMON LAW UNFAIR COMPETITION
### *(on behalf of all Plaintiffs)*

77.     Plaintiffs repeat and re-allege each and every allegation set forth above, and incorporate them herein by reference.

78.     Defendants' unauthorized advertising, distribution and sale of Decoded Fragrances constitutes a false designation of origin and a false description or representation that Defendants' Decoded Fragrances are authorized by Plaintiffs, and is thereby likely to confuse consumers.

79.     Defendants are making unauthorized use of marks owned by Plaintiffs and exclusively licensed to Coty for fragrance products with full knowledge that those marks are associated with and exclusively designate Plaintiffs' fragrance products, including the Calvin Klein Marks, the Hugo Boss Marks and the Marc Jacobs Marks.   Defendants' acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with these marks.

80.     Defendants' sale and distribution of Decoded Fragrances constitutes common law unfair competition.

81.     The aforesaid conduct of Defendants is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law injunctive relief is warranted considering the hardships between Plaintiffs and Defendants, and the public interest would be served by enjoining Defendants' sale of infringing fragrances.

**WHEREFORE**, Plaintiffs demand judgment as follows:

1.     That an injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities

owned or controlled by either Defendant, and all those in active concert and participation with
either Defendant, and each of them who receives notice directly or otherwise of such injunction
from:

a)       importing, exporting, manufacturing, producing, distributing, circulating,
selling, offering for sale, advertising, promoting or displaying any of the products sold under
Coty Fragrance Marks with a removed, obscured, partially removed, over-stickered, or otherwise
defaced or obliterated Production Code;

b)       imitating, copying, or making unauthorized use of Coty Fragrance Marks;

c)       importing, exporting, manufacturing, producing, distributing, circulating,
selling, offering for sale, advertising, promoting or displaying any product bearing any
simulation, reproduction, counterfeit, copy or colorable imitation of Coty Fragrance Marks;

d)       using Coty Fragrance Marks, or any simulation, reproduction, counterfeit,
copy or colorable imitation thereof, in connection with the importation, promotion,
advertisement, display, sale, offering for sale, manufacture, production, circulation or
distribution of any product in such fashion as to relate or connect, or tend to relate or connect,
such product in any way to Plaintiffs or to any goods sold, manufactured, sponsored, approved
by or connected with Plaintiffs;

e)       using any false designation of origin or false description, or performing
any act which is likely to lead members of the trade or public to believe that any infringing
product manufactured, distributed or sold by Defendant is in any manner associated or connected
with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by
Plaintiffs;

f)      engaging in any other activity constituting unfair competition with Plaintiffs, or constituting infringement of Coty Fragrance Marks;

g)      taking any action, including through the use of Coty Fragrance Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, that dilutes the unique association between Plaintiffs and their marks, or that tarnishes the reputation or image of Plaintiffs;

h)      disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence or documents (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise bearing Coty Fragrance Marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, or relating or referring in any manner to the removal or other obliteration of any serial number, Production Code, or other quality control or anti-counterfeiting measure from such merchandise;

i)      removing, obscuring, partially removing, over-stickering, or otherwise defacing or obliterating by any means a Production Code on any of the products sold under Coty Fragrance Marks; or

j)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above;

2.      Directing that Defendants make available to Plaintiffs for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and

things concerning all transactions relating to the purchase or sale and unauthorized use of, or removal of Production Codes from, products or packaging incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of Coty Fragrance Marks and provide Plaintiffs the names, addresses and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the source(s) of such products and packaging, including all manufacturers, distributors and/or suppliers;

3.      Directing that Defendants deliver to Plaintiffs' counsel for destruction at Defendants' costs all signs, products, packaging, promotional material, advertising material, catalogs and any other item that bears, contains or incorporates Coty Fragrance Marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

4.      Directing that Defendants recall from all distributors, retailers or other recipients any and all products and packaging sold or distributed by Defendants under or in connection with Coty Fragrance Marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and, upon recall, to deliver such goods up to Plaintiffs' counsel for destruction at Defendants' cost;

5.      Requiring Defendants to account for and pay over to Plaintiffs three times the profits realized by each Defendants from infringement of Coty Fragrance Marks and its unfair competition with Plaintiffs;

6.      Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), or if Plaintiffs elect, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, arising out of Defendants' acts of willful counterfeiting;

7.      Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendants' acts of willful trademark infringement and unfair competition;

8.      Awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums;

9.      Awarding Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a);

10.      Awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

11.      Holding Defendants Cosmopolitan, Abraham, and Gold jointly and severally liable for any monetary award entered against any or all of them;

12.      Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services modified, offered, advertised or promoted by or on behalf of Defendant are authorized by Plaintiffs or related in any way to products sold under Coty Fragrance Marks;

13.      Directing that Defendants file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above; and

14.      Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

DATED: April 3, 2019                          Respectfully submitted,

                                              KILPATRICK TOWNSEND & STOCKTON LLP

                                              By: */s/ Robert Potter*
                                              LISA PEARSON (LP 4916)

26

lpearson@kilpatricktownsend.com
ROBERT POTTER (RP 5757)
rpotter@kilpatricktownsend.com
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Plaintiffs*