UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

COTY INC., CALVIN KLEIN TRADEMARK TRUST,
CALVIN KLEIN, INC., CALVIN KLEIN COSMETIC
CORPORATION, HUGO BOSS TRADE MARK
MANAGEMENT GMBH & CO. KG, and MARC
JACOBS TRADEMARKS, LLC,

        Plaintiffs,

        -v-                                     No. 18 CV 11145-LTS-HBP

COSMOPOLITAN COSMETICS INC.,
EUGENE ABRAHAM, and WILLIAM GOLD,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiffs Coty Inc., Calvin Klein Trademark Trust, Calvin Klein, Inc., Calvin Klein Cosmetic Corporation, HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks, LLC bring this action against Cosmopolitan Cosmetics Inc., Eugene Abraham, and William Gold (collectively "Defendants"). All Plaintiffs other than Coty Inc. bring claims of trademark infringement and trademark counterfeiting under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1), and, along with Coty Inc., claims of unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under New York common law. Plaintiffs seek permanent injunctive relief, an accounting, treble profits, treble damages, compensatory damages, costs and attorneys' fees, and other relief authorized by the Lanham Act. Defendants move to dismiss Plaintiffs' First Amended Complaint (Docket Entry No. 31 (the "FAC"))

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket Entry No. 40.)

The Court has subject matter jurisdiction of the action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367. The Court has reviewed all of the parties' submissions and arguments and, for the following reasons, grants in part and denies in part Defendants' motion.

BACKGROUND

The following facts are taken from the First Amended Complaint, the well pleaded allegations of which are presumed true for the purposes of this motion.

Plaintiff Coty Inc. manufactures, distributes, and sells luxury fragrance products under its own proprietary trademarks and under licensed marks, including CALVIN KLEIN, HUGO BOSS, and MARC JACOBS pursuant to exclusive fragrance licenses (collectively, "Plaintiffs' Fragrances"). (FAC at ¶ 1.)

Coty affixes a "Production Code" to each unit of Plaintiffs' Fragrances at the time of manufacture. (Id. at ¶ 2, 35.) The Production Codes are used for Plaintiffs' "quality assurance, anti-counterfeiting and anti-theft measure[s]." (Id. at ¶¶ 35-37.) The Production Code indicates the date of production and facilitates "corrective action or targeted recalls" in the event of any quality issue. (Id. at ¶ 36.) Plaintiffs' customers "expect consistent high quality fragrance products . . . [and] the removal of the Production Code and resulting mutilation of genuine product packaging degrades the products" in ways that "are obviously significant to the consuming public." (Id. at ¶¶ 41-42.)

Defendant Cosmopolitan Cosmetics ("Cosmopolitan") is a corporation that sells fragrances to retailers and other distributors. (Id. at ¶ 15.) Cosmopolitan has been selling units of Plaintiffs' Fragrances from which the Production Codes have been removed, or on which the Production Codes have been obscured, stickered or otherwise mutilated (hereinafter, the "Decoded Products"). (Id. at ¶ 45.) Plaintiffs did not authorize the sale of the Decoded Products; products are decoded to conceal the identity of the seller who is diverting the products outside of authorized distribution channels. (Id. at ¶ 40.) Defendants Eugene Abraham and William Gold are the CEO and President of Cosmopolitan, respectively, and Plaintiffs allege that they control the acts of Cosmopolitan that are described in the complaint and that they are "directly responsible for or ha[ve] otherwise orchestrated" the trademark infringement activities. (Id. at ¶¶ 16, 17.)

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint must proffer sufficient non-conclusory facts to "plausibly suggest an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). A complaint that contains only "naked assertion[s]" will not suffice. Twombly, 550 U.S. at 557.

A claim for trademark infringement arises when a person uses a registered mark in commerce in connection with the sale of a good without the consent of the registrant and in a manner likely to cause confusion about the source of the goods. See Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996). However, the "First Sale Doctrine" carves out an exception for the resale of "genuine goods bearing a true mark even though the sale is not

authorized by the mark owner." Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 61 (2d Cir. 1992) (quoting NEC Electronics v. Cal Circuit Abco, 810 F.2d 1506, 1509 (9th Cir. 1987)).

There are two exceptions to the First Sale Doctrine that are relevant to Plaintiffs' claims: the Quality Control Exception and the Material Difference Exception. The Quality Control Exception applies when goods do not conform to the trademark holder's quality control standards. See Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994). The Material Difference Exception applies if the goods differ in a way that would likely be relevant to a consumer's decision to purchase them. See Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1302 (11th Cir. 2001).

Plaintiffs invoke the Quality Control Exception. As the Second Circuit has observed, "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2d Cir. 1986). "[T]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." Id. Moreover, "a trademark holder is not required to adopt the most stringent quality control procedures available," but is instead permitted to make a business judgment about the type of procedures to implement. Warner-Lambert, 86 F.3d at 6-7. Applying these considerations, the Second Circuit has held that, to establish that a product is not genuine because it does not meet the trademark holder's quality control standards, a "trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." Id. at 6.

Defendants argue that the Quality Control Exception is unavailable because Plaintiffs have pleaded that the Production Code measure was implemented by Coty, a licensee, rather than by the trademark owner, and because Plaintiffs do not apply Production Codes to every unit of each of their fragrances. Defendants' arguments are unavailing at this preliminary stage of the proceeding. In analyzing claims asserted under the Quality Control Exception, courts in the Second Circuit have considered whether goods conform with the quality control procedures implemented by a licensee as well as measures implemented by the trademark holder itself. See, e.g., Zino Davidoff SA v. CVS Corp., 571 F.3d 238 (2d Cir. 2009) (finding that goods were not genuine where they failed to meet quality control measures developed jointly by the trademark holder and licensee); L'Oreal USA, Inc. v. Trend Beauty Corp., No. 11-CIV-4187 (RA), 2013 WL 4400532, at *15 (S.D.N.Y. Aug. 15, 2013) (finding that goods were not genuine where they lacked markings used by the exclusive licensee to maintain quality control); Zip Int'l Grp., LLC v. Trilini Imps., Inc., No. 09-CIV-2437 (JG) (VVP), 2011 WL 2132980, at *4 (E.D.N.Y. May 24, 2011) (stating that the quality control exception requires that Plaintiff produce "evidence to demonstrate that [Defendant's] goods are not subject to the same type or measure of quality control as [Plaintiff exclusive licensee's] goods."). Furthermore, Plaintiff has alleged that Production Codes are applied to each unit of each relevant fragrance. This factual allegation is presumed true for the purposes of this motion. Defendants' proffer of allegations and documentation of supposed unmarked goods are not pertinent at this juncture.[1]

---

[1] Defendants submit photographs purportedly showing that Plaintiffs did not apply the Production Code to every unit sold. (Docket Entry No. 41, at 7-8, 11.) However, the court's function on a Rule 12(b)(6) motion is "not to weigh the evidence … but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Defendants' photographs are not the type of "facts" of which a court may take judicial notice. Fed. R. Evid. 201(b); Alvarez v. Cty. of Orange, N.Y., 95 F. Supp. 3d 385, 398 (S.D.N.Y. 2015) ("[F]acts appropriate for judicial notice

Plaintiffs' allegations satisfy each of the three elements required to support the Quality Control Exception. As previously noted, Plaintiffs have alleged that each unit of their Fragrances bears a Production Code which indicates the date of production, facilitates "corrective action or targeted recalls," and helps with "quality assurance, anti-counterfeiting and anti-theft measure[s]." (FAC at ¶¶ 35-36.) In Zino Davidoff, the court affirmed the grant of a preliminary injunction, finding that similar multi-digit, unique production codes on fragrance packaging were a "legitimate, substantial, and nonpretextual" quality control measure and that "removal of the codes expose[d] [Davidoff] to a realistic risk of increased incidence of counterfeits with resultant damage to the reputation of its mark." 571 F.3d at 244. Plaintiffs have also alleged that they abide by the procedure described in the FAC, stating they "follow[ed] … [their] quality control procedures" by applying the Production Code to "each unit" of Plaintiffs' Fragrances. (FAC at ¶ 35.) Plaintiffs have further alleged that customers "expect consistent high quality fragrance products . . . [and] the removal of the Production Code and resulting mutilation of genuine product packing degrades the products" in ways that "are obviously significant to the consuming public." (Id. at ¶¶ 41-42.) In light of Plaintiffs' broad allegations regarding the use of Production Codes on four specific luxury fragrances that are licensed to Coty, among other such fragrances, Defendants' proffer that Plaintiffs do not use Production Codes on each and every product that Coty distributes is insufficient to establish, at this pleading stage, that Plaintiffs' measures are insubstantial as a matter of law.

Plaintiffs have also alleged sufficient facts to support application of the Material Difference Exception. The Second Circuit has held that "goods are not genuine if they . . . differ

---

must . . . [be] common knowledge [or] … derived from an unimpeachable source.") (citations omitted).

materially from the product authorized by the trademark holder for sale." Zino Davidoff, 571 F.3d at 243 (citing Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 73 (2d Cir. 1987)).  A material difference is one "consumers would likely deem relevant when considering a purchase of the product." Id. at 246.  "In the context of gray-market goods … [courts] require[] no more than a slight difference which consumers would likely deem relevant when considering a purchase of the product." Id.  Although the term "gray market goods" typically refers to goods manufactured outside the United States which are imported without the consent of the trademark holder, see K Mart Corp. v. Cartier, Inc., 486 U.S. 281 (1988), courts in this Circuit have applied the legal standards from gray market goods cases to claims involving trademarked domestic goods sold by unauthorized retailers.  See Technomarine SA v. Jacob Time, Inc., 905 F. Supp. 2d 482, 488 (S.D.N.Y. 2012) (defining gray market goods as "goods that are resold through unauthorized channels"); Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 308 & n.103 (S.D.N.Y. 2007) (applying case law about gray goods to "sales by unauthorized United States retailers of goods bearing genuine trademarks that have been created by a trademark owner for the United States market" because of the "legal similarly of the[] two categories of goods").

In the context of luxury fragrances that are often purchased as gifts, the Second Circuit has held that damage to the physical appearance of the packaging that results from the process of removing production codes also damages the allure of the product.  See Zino Davidoff, 571 F.3d at 246 (holding that consumers may regard a luxury product as inferior or suspicious where its packaging has been tampered with by cutting away portions or applying acid).  Plaintiffs here have alleged that their "consumers expect consistent high-quality fragrance products," that "in many instances the removal of the Production Code and resulting mutilation

of genuine product packaging degrades the products," and that the differences between Plaintiffs' genuine products and the Decoded Products "are obviously significant to the consuming public." (FAC at ¶¶ 41-42.) Plaintiffs have thus alleged sufficiently material physical differences between the packaging of the coded and Decoded Products.

Plaintiffs' arguments that the lack of visible Production Codes and the difference in quality control procedures are material differences are, however, unavailing. (FAC at ¶ 41-42.) Plaintiffs have not alleged facts from which the Court can infer that those differences are material to consumers' decisions to purchase Plaintiffs' Fragrances. The Court declines Plaintiff's invitation to conclude that a difference in quality control procedures alone could be material to consumers' decisions to purchase Plaintiffs' Fragrances. Plaintiffs have not identified, and the Court's research has not uncovered, any case within the Second Circuit which has held that the material difference exception was satisfied by a difference in quality control procedures without an observable difference in the products themselves. Plaintiffs' reliance on the Second Circuit's decision in Zino Davidoff as support for that conclusion is misplaced because that court's statement that "whether consumers and/or retailers understand the codes is irrelevant to the codes' performance of their function" was asserted to explain that the quality control exception applied if the procedures were not pretextual, regardless of a consumer's knowledge of those procedures. (Docket Entry No. 46, p.11-12) (citing 571 F.3d 238, 245.)[2]

---

[2] Similarly unpersuasive as support for Plaintiffs' thesis is the First Circuit's statement that "differences in quality control methods, although not always obvious to the naked eye, are nonetheless important to the consumer." (Docket Entry No. 46, p.13) (citing Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 644 (1st Cir. 1992)). In support of that conclusion, the Nestle court cited El Greco Leather Prods. Co. and Shell Oil Co. v. Commercial Petroleum, Inc., two cases which were decided in relevant part on the quality control exception. Nestle, 982 F.2d at 644 (citing 806 F.2d at 395; 928 F.2d 104 (4th Cir. 1991)). This Court respectfully declines to follow the First Circuit insofar

Consequently, whether consumers know that the Production Code is the "mechanism [that is] in place so that they can ascertain whether a safety warning or product recall applies to a product they own" is critical to the Court's determination of whether consumers would likely deem the lack of visible Production Codes relevant to their decision to purchase Plaintiffs' Fragrances. (Docket Entry No. 46, p.11.) The lack of non-conclusory allegations which could plausibly suggest that the absence of the Production Codes is relevant to consumer purchasing decisions renders Plaintiffs' pleading deficient in this regard.

Plaintiffs have stated a plausible claim that the Decoded Products are counterfeit goods. Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C.S. § 1127 (LexisNexis 2019). "Although 'spurious' is not a statutorily defined term under the Lanham Act," courts in this Circuit have defined it as "[d]eceptively suggesting an erroneous origin; fake." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., No. 12-CIV-1416 (GBD) (RLE), 2015 WL 4468083, at *3 (S.D.N.Y. July 8, 2015) (collecting cases). "[T]he essence of counterfeiting is that the use of the infringing mark 'seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" Coty Inc. v. Excell Brands, LLC, 277 F. Supp. 3d 425, 468 (S.D.N.Y. 2017) (citing Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 237 (S.D.N.Y. 2012)). In the gray market goods context where the product is manufactured by the trademark holder, a circuit court has recognized that a material difference "may well turn an otherwise 'genuine' product into a 'counterfeit' one . . . because a difference in products bearing the same name confuses consumers and impinges on the

---

as it held that differences in quality control procedures that are unknown to a consumer could support the Material Difference Exception.

. . . trademark holder's goodwill." Nestle, 982 F.2d at 638; see e.g. Johnson & Johnson Consumer Cos. v. Aini, 540 F. Supp. 2d 374, 385 (E.D.N.Y. 2008) (applying the "gray goods test for genuineness" and determining the product to be counterfeit based on differences in packaging such as the lack of an expiration date and batch code).  Thus, a product which was originally manufactured by the trademark holder but is materially different may become a counterfeit product, "despite the use of the true manufacturer's mark."  Tiffany and Co. v. Costco Wholesale Corp., 13-CIV-1041 (LTS) (DCF), 2019 WL 120765, at *8 (S.D.N.Y. Jan. 7, 2019).  As discussed above, Plaintiffs have plausibly alleged a material difference between the Decoded Products and genuine fragrances based on damaged packaging and the lack of quality control procedures.  (FAC at ¶ 42.)  Because Plaintiffs have alleged the Decoded Products bear Plaintiffs' registered trademark, are not authorized for resale, and are sold in an "intentionally fraudulent" manner by which to trick consumers into believing they are the "genuine article" despite the material difference (FAC at ¶ 38, 61), Plaintiffs have alleged a plausible counterfeiting claim.

However, Plaintiffs' claims against Defendants Abraham and Gold must be dismissed.  A corporate officer may only be held personally liable for trademark infringement and unfair competition "if the officer is a moving, active, conscious force behind [the defendant] corporation's infringement."  Canon U.S.A., Inc. v. F & E Trading LLC, 2:15-CIV-6015 (DRH) (AYS), 2017 WL 112515, at *4 (E.D.N.Y. Jan. 11, 2017) (internal citations omitted); FC Online Mktg., Inc. v. Burke's Martial Arts, LLC, 14-CIV-3685 (SJF) (SIL), 2015 WL 4162757, at *5 (E.D.N.Y. July 8, 2015).  A showing that the officer "authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability."  Canon U.S.A., Inc., 2017 WL 112515, at *4.

Here, Defendants Abraham and Gold are alleged to be the Chief Executive Officer and President of Cosmopolitan respectively. However, the Amended Complaint offers only a conclusory statement with respect to each individual officer's involvement in the alleged acts of unfair competition. The Amended Complaint is silent as to any specific actions "authorized" by Defendants Abraham and Gold, stating only that they each control the acts of Cosmopolitan and are each "directly responsible for or ha[ve] otherwise orchestrated" the acts of trademark infringement. (FAC at ¶¶ 16-17.) It proffers no facts sufficient to support an inference that either of them was an active force behind the infringement described in the FAC. Accordingly, the claims against these individuals are dismissed.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is denied as to all claims against Defendant Cosmopolitan Cosmetics Inc., and granted as to all claims against Defendants Abraham and Gold.

Plaintiffs are hereby granted permission to file a motion by **Friday, January 24, 2020,** for leave to file a Second Amended Complaint including repleaded claims as to Defendants Abraham and Gold. Any such motion should be directed to Judge Swain and must comply with the applicable federal, local, and chambers rules, and must be accompanied by a blacklined version of the proposed Second Amended Complaint identifying all changes from the First Amended Complaint. Any proposed Second Amended Complaint will replace the Amended Complaint entirely and thus must include all of the factual allegations and legal claims that Plaintiffs wish to pursue.

The case in all other respects remains referred to Magistrate Judge Cave for General Pretrial Management.

Docket Entry No. 31 is resolved.

SO ORDERED.

Dated: New York, New York
January 9, 2020

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge