UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COTY INC., et al.,

                Plaintiffs,

against

COSMOPOLITAN COSMETICS INC., et al.,

                Defendants.

CIVIL ACTION NO.: 18 Civ. 11145 (LTS) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

The Court held a Telephone Conference on June 11, 2020 (the "June Conference") regarding the discovery issues raised in the parties' joint Letter-Motion (ECF No. 96) (the "Motion"). The Court resolves the Motion as set forth below.

## I. INTRODUCTION

Plaintiffs Coty Inc. ("Coty"), Calvin Klein Trademark Trust ("CKTT"), Calvin Klein, Inc., Calvin Klein Cosmetic Corporation, HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks, LLC (collectively, "Plaintiffs"),[1] sued Cosmopolitan Cosmetics Inc. ("Cosmopolitan"), Eugene Abraham, and William Gold (Abraham and Gold, the "Individual Defendants") (Cosmopolitan and the Individual Defendants, collectively, "Defendants"). (ECF No. 31). All Plaintiffs other than Coty assert claims for "trademark infringement and trademark counterfeiting under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); [and all Plaintiffs including Coty assert] claims for unfair competition [,false

---

[1] CKTT, Calvin Klein, Inc., Calvin Klein Cosmetic Corporation, HUGO BOSS Trade Mark Management GmbH & Co. KG, and Marc Jacobs Trademarks, LLC are referred to as the "Brand Owner Plaintiffs."

description,] and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)," and unfair competition under New York common law. (Id. at 13, 19–21).

A detailed discussion of the parties' relationship and Plaintiffs' claims, as well as uniform defined terms, are set forth in the memorandum opinion and order issued by the Honorable Laura Taylor Swain ruling on Defendants' motion to dismiss the First Amended Complaint ("FAC"), and are incorporated herein by reference. See Coty Inc. v. Cosmopolitan Cosmetics Inc., 432 F. Supp. 3d 345 (S.D.N.Y. 2020) (the "MTD Decision"). As in the MTD Decision, the Court uses the term "Decoded Products" to refer to the "units of Plaintiffs' Fragrances from which the Production Codes have been removed, or on which the Production Codes have been obscured, stickered or otherwise mutilated" and then sold by Cosmopolitan. Id. at 349.[2]

## II. DISCUSSION

### A. Legal Standard

Under the Federal Rules of Civil Procedure, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 26 gives a district court "broad discretion . . . to impose limitations or conditions on [ ] discovery, . . .which extends to granting or denying motions to compel or for protective orders on 'just terms.'" Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018) (internal citation omitted);

---

[2] In the MTD Decision, Judge Swain dismissed all claims against the Individual Defendants. Coty Inc., 432 F. Supp. 3d at 353–54.

see EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) ("Of course, as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way."), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134 (2014).

### B. Plaintiffs' Issues with Defendants' Discovery Responses

#### 1. Information regarding Cosmopolitan's sales

Plaintiffs argue that, in addition to the Decoded Products, Cosmopolitan also sells "untampered-with units of these same fragrance products" ("Non-Decoded Products"), as to which Cosmopolitan has refused to produce any information concerning sales or how it tracks sales of the Decoded Products separately from sales of Non-Decoded Products. (ECF No. 96 at 2). Plaintiffs argue that they are entitled to information about "[t]he total scope of Cosmopolitan's sales of Plaintiffs' fragrances," both Decoded and Non-Decoded Products, "and the reliability of any related record-keeping" to enable Plaintiffs to establish their monetary damages and, potentially, prove Cosmopolitan's bad faith. (Id. at 2–3).

Cosmopolitan responds that the information Plaintiffs are seeking concerns "products that have no conceivable connection with this case," and that the Court previously ruled that Non-Decoded Products were outside the scope of discovery. (ECF No. 96 at 3 (citing ECF No. 77 at 16)). Cosmopolitan argues that "discovery relating to non-accused products is legally irrelevant and not likely to lead to discovery of relevant evidence" because "Plaintiffs cannot seek damages for such products or seek to enjoin their sale." (Id. at 3). Cosmopolitan also argues that Plaintiffs' request for information about Non-Decoded Products is facially unreasonable because those products are non-infringing, and, in any event, it has produced

business records sufficient to show the differentiation between Decoded and Non-Decoded Products, which Plaintiffs can explore through deposition testimony. (Id. at 3–4).

As Judge Swain set forth in her January 9, 2020 decision on the motion to dismiss the FAC, "[a] claim for trademark infringement arises when a person uses a registered mark in commerce in connection with the sale of a good without the consent of the registrant and in a manner likely to cause confusion about the source of the goods." Coty Inc., 432 F. Supp. 3d at 349; see 15 U.S.C. § 1114(1)(a). The Second Circuit has explained that "[d]istribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image," in which case "the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement." Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996) (emphasis added). The focus, then, of the trademark infringement inquiry is on the non-conforming goods that a defendant allegedly sold. See Id. at 6–7 (focusing the infringement analysis on the non-conforming products); Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 244–46 (2d Cir. 2009) (analyzing trademark infringement claims based on fragrances with codes removed); L'Oreal USA, Inc. v. Trend Beauty Corp., No. 11 Civ. 4187 (RA), 2013 WL 4400532, at *7, 14–18 (S.D.N.Y. Aug. 15, 2013) (tallying counterfeit and decoded fragrance units, and analyzing whether defendant's sale of the decoded units violated Lanham Act).

Because the focus of Plaintiffs' claims must be on the non-conforming goods Cosmopolitan allegedly sold—the Decoded Products—so too must the scope of discovery be limited to the non-conforming goods—the Decoded Products. Plaintiffs have no colorable claim against Cosmopolitan as to fragrances from which the codes have not been removed,

because the Non-Decoded Products pose no likelihood of confusion, see Bel Canto Design, Ltd. v. MSS Hifi, Inc., 837 F. Supp. 2d 208, 223 (S.D.N.Y. 2011), and accordingly, Plaintiffs are not entitled to discovery as to those fragrances.  See Jenny Yoo Collection, Inc. v. David's Bridal, Inc., No. 18 Civ. 9926 (PGG) (BCM), 2019 WL 6841966, at *1, 4 (S.D.N.Y. Dec. 16, 2019) (denying motion to compel discovery concerning wedding dresses as to which plaintiff did not assert any infringement claims).  Accordingly, Plaintiffs' request to compel Cosmopolitan's production of information concerning sales of Non-Decoded Products is DENIED.

### 2. Information regarding when and how Cosmopolitan decoded Plaintiffs' products

Plaintiffs argue that Cosmopolitan has "obstructed each of Plaintiffs' efforts to determine the timing and manner in which it has decoded and sold Plaintiffs' fragrance products."  (ECF No. 96 at 4).  Specifically, Plaintiffs served requests for admission ("RFAs") asking Cosmopolitan to admit whether, how, and when it sold Decoded Products corresponding to the fifteen (15) trademarks at issue in this case.  (Id. at 5).  Plaintiffs complain that Cosmopolitan responded with "baseless objections," and even though Cosmopolitan's counsel admitted during a January 2020 meet-and-confer that Cosmopolitan continued to sell "some" Decoded Products, it has failed to produce up-to-date sales records or permit a second inspection of Cosmopolitan's facilities.  (Id.)  During the June Conference, Plaintiffs represented that during their inspection, they observed Decoded Products but Cosmopolitan has been selling these units and only has approximately 172 Decoded Products remaining in its inventory.  (ECF No. 99 at 21, 27–28).  Plaintiffs argue that any sales of Decoded Products after this action commenced would constitute spoliation of evidence.  (ECF No. 96 at 5).

Cosmopolitan responds that there has been no spoliation of evidence because any Decoded Products it has sold were "inspected, photographed and sampled by Plaintiffs" during their inspection of Cosmopolitan's facility in May 2019, and that Cosmopolitan "made clear that only a single inspection would be permitted." (ECF No. 96 at 6). Cosmopolitan points out that Plaintiffs never sought a preliminary injunction against sales of the Decoded Products, and have not shown good cause for a second inspection. (Id.) In addition, Cosmopolitan complains that Plaintiffs' RFAs contained numerous subparts that totalled 634 separate requests. (Id.) Finally, Cosmopolitan contends that it has already provided updated sales information concerning the Decoded Products. (Id.)

As set forth above, supra Section II.B.1, the focus of Plaintiffs' claims, and therefore the focus of discovery in this case, is Cosmopolitan's alleged sales of the Decoded Products. Therefore, Plaintiffs' request for information regarding the sales of Decoded Products is GRANTED IN PART and DENIED IN PART. To the extent it has not done so already, Cosmopolitan must produce to Plaintiffs information sufficient to show sales of any Decoded Products after November 29, 2018, when this action commenced, including sales of any Decoded Products since Plaintiffs' inspection.

Turning to the RFAs, Federal Rule of Civil Procedure 36, which "permits a party to request certain admissions from other parties," "promotes 'truth-seeking in litigation and efficiency in dispensing justice' by 'facilitat[ing] proof with respect to issues that cannot be eliminated from the case and . . . narrow[ing] the issues by eliminating those that can be.'" River Light V, L.P. v. Lin & J Int'l, Inc., 299 F.R.D. 61, 63 (S.D.N.Y. 2014) (quoting Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007)). A party is deemed to have admitted an RFA that it

does not answer or object to within 30 days. Id. An RFA "should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." Carver v. Bank of N.Y. Mellon, No. 15 Civ. 10180 (JPO) (JLC), 2018 WL 4579831, at *2 (S.D.N.Y. Sept. 25, 2018) (internal citation omitted). In addition, RFAs should also "'not be used in an effort to harass the other side or in the hope that a party's adversary will simply concede essential elements.'" River Light V, 299 F.R.D. at 63 (quoting Conlon, 474 F.3d at 622 (internal citation omitted)).

The Court has reviewed Plaintiffs' RFAs and Cosmopolitan's responses, and denies Plaintiffs' request to compel amended responses to these RFAs for three reasons. First, Cosmopolitan has denied each of the RFAs numbered 51–62, and, having done so, no amended responses are needed. See Carver, 2018 WL 4579831, at *3 (denying request for amended responses where defendant had denied each RFA at issue); Republic of Turkey v. Christie's, Inc., No. 17 Civ. 3086 (AJN) (SDA), 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same). Second, Plaintiffs' RFAs do not ask Cosmopolitan to admit facts as to which there is no real dispute; rather, they "seek information as to 'the fundamental disagreement at the heart of the lawsuit,'" which are "more appropriately addressed through deposition and document discovery." Carver, 2018 WL 4579831, at *3 (quoting Republic of Turkey, 326 F.R.D. at 399). Third, Plaintiffs' RFAs, which contain multiple defined and undefined terms and seek admissions as to multiple time periods and multiple trademarks, "are not phrased so that they can be admitted or denied without explanation, a sine qua non for a proper RFA." Id. at *3. Accordingly, Plaintiffs' request to have Cosmopolitan amend its responses to the RFAs is DENIED.

Finally, the Court finds that Plaintiffs have not shown that they received material information after the inspection as would provide good cause for a second inspection. Cf. Klorczyk v. Sears, Roebuck & Co., Civ. No. 3:13 Civ. 257 (JAM), 2015 WL 1600299, at *2 (D. Conn. Apr. 9, 2015) (permitting second inspection "in light of the information defendants received after the first inspection"). Thus, Plaintiffs' request for a second inspection is simply cumulative and duplicative of the inspection in May 2019, and therefore, DENIED. See Fed. R. Civ. P. 26(b)(2)(C)(i).

### 3. Information regarding the role of the Individual Defendants

Plaintiffs complain that, despite the Court's February 5, 2020 Order that Cosmopolitan produce "documents related to the [I]ndividual [D]efendants' roles," (ECF No. 74 at 1 (the "February 5 Order")), Cosmopolitan has produced just a single set of minutes and named only two individuals in response to Plaintiffs' interrogatory seeking "all present and former owners, members, officers, employees, and agents of Cosmopolitan who authorized, instructed, or approved of the Decoding of Fragrance Products bearing any of Plaintiffs' Marks, and describe the nature and scope of each such person's involvement." (ECF Nos. 96 at 7; 96-15 at 32). Cosmopolitan responds that it has conducted a reasonable search and produced seven years' worth of board meeting minutes, and "has not located any additional documents." (ECF No. 96 at 7). As to its responses to Plaintiffs' interrogatories, Cosmopolitan states that it objected to Plaintiffs' definitions and "provided answers based on its interpretation of the relevant information being requested." (Id.)

The Court agrees that Cosmopolitan "cannot be faulted for failing to produce records [it does] not have." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 40 (S.D.N.Y. 2010). To the extent that

8

Plaintiffs wish for a more elaborate discussion of the roles of the Individual Defendants or of the individuals identified in Cosmopolitan's interrogatory responses, they may depose those individuals in the course of discovery.  Accordingly, Plaintiffs' request that Cosmopolitan be compelled to revise or supplement its document responses, production, and interrogatory responses concerning the Individual Defendants is DENIED.

### C. Cosmopolitan's Issues with Plaintiffs' Discovery Responses

#### 1. Plaintiffs' agreements

In the February 5 Order, the Court required Plaintiffs to "produce redacted versions of agreements between the [P]laintiffs, and [Coty's] agreements with its distributors to the extent they refer or relate to production codes."  (ECF No. 74 at 1).  Cosmopolitan now argues that Plaintiffs have produced only six, heavily-redacted agreements for certain Plaintiffs (the "Six Agreements"), and have failed to produce any agreements to which Plaintiff CKTT is a party and an agreement between Plaintiff Marc Jacobs Trademarks, LLC and Marc Jacobs International LLC (the "Marc Jacobs Agreement").  (ECF No. 96 at 8).  Plaintiffs state that they have produced the agreements governing Coty's use of the CALVIN KLEIN mark, which is registered to Plaintiff CKTT, and have produced a Marc Jacobs license agreement that recites the relevant terms of the Marc Jacobs Agreement.  (Id. at 9).  Plaintiffs assert that their redactions are appropriate and that they have not redacted "any relevant language concerning unique production codes, Coty's selective distribution system for luxury fragrances, trademark ownership or usage, product packaging design, infringement actions, or other issues relevant to Plaintiffs' claims and Cosmopolitan's defenses."  (Id.)

The Court credits Plaintiffs' argument that they have satisfied their obligation to produce agreements governing CKTT, but finds that they must produce the Marc Jacobs Agreement, which, as described, appears to be relevant and responsive to Cosmopolitan's requests and should not be burdensome to produce. Accordingly, Cosmopolitan's request that Plaintiffs produce the Marc Jacobs Agreement is GRANTED.

The Protective Order in this matter provides for three tiers of confidentiality designations: "Confidential," "Highly Confidential-Attorneys' Eyes Only," and "Highly Confidential-Outside Counsel Only." (ECF No. 59 at 2–4). Plaintiffs produced the Six Agreements subject to the second-tier designation, Highly Confidential-Attorneys' Eyes Only, and have redacted large blocks of all but one agreement, such that, in some places, the heading or section of the agreement is not visible. (ECF Nos. 96-1 – 96-6). Although the parties have submitted the redacted versions of the Six Agreements, they have not supplied the unredacted versions for in camera review by the Court. Accordingly, the Court ORDERS the parties to meet-and-confer in good faith in an attempt to reach an agreement as to the redaction and classification status of the Six Agreements, and if, by July 1, 2020, they are unable to reach agreement as to some or all of the Six Agreements, they must submit the disputed agreements, with and without redactions, to the Court for in camera review. See United States v. Mount Sinai Hosp., 185 F. Supp. 3d 383, 392–93 (S.D.N.Y. 2016) (ordering parties to submit disputed documents for in camera review); Fab-Tech, Inc. v. E.I. DuPont De Nemours & Co., No. 104 Civ. 275, 2006 WL 3702753, at *1 (D. Vt. Dec. 13, 2006) (ordering parties to consult concerning documents whose confidentiality classification was disputed).

## 2. Brand Owner Plaintiffs' discovery responses

Cosmopolitan complains that the Brand Owner Plaintiffs have objected and refused to respond to interrogatories numbered 2–10. (ECF No. 96 at 9). Plaintiffs assert that they have moved to dismiss as frivolous the "naked licensing counterclaim," to which these interrogatories solely relate, providing good cause for staying discovery as to this issue. (Id. at 10).

The fact that Plaintiffs have moved to dismiss the naked licensing counterclaim "does not automatically stay discovery," Schachter v. Sunrise Senior Living Mgmt., No. 3:18 Civ. 953 (JAM), 2020 WL 486880, at *3 (D. Conn. Jan. 30, 2020), nor did Plaintiffs move for any stay of discovery, even though their motion was filed months ago. (See ECF No. 90). Furthermore, these interrogatories seek information beyond the naked licensing counterclaim that goes to the heart of Plaintiffs' claims in this action, including whether the quality control measures Coty and the Brand Owner Plaintiffs have implemented satisfy the Quality Control Exception.[3] See Coty Inc., 432 F. Supp. 3d at 350 ("In analyzing claims asserted under the Quality Control Exception, courts in the Second Circuit have considered whether goods conform with the quality control procedures implemented by a licensee as well as measures implemented by the trademark holder itself."). Accordingly, Cosmopolitan's request that the Brand Owner Plaintiffs be compelled to provide substantive responses to interrogatories numbered 2–10 is GRANTED.

---

[3] See, e.g., Interrogatory No. 2 (ECF No. 96-7 at 6) (seeking each instance in which a Brand Owner Plaintiff "inspected a Coty facility where fragrances bearing the Asserted Marks were manufactured"); Interrogatory No. 4 (ECF No. 96-7 at 8) (seeking each instance in which a Brand Owner Plaintiff "sampled fragrances bearing the Asserted Marks"); Interrogatory No. 5 (ECF No. 96-7 at 9) (seeking each instance in which a Brand Owner Plaintiff "evaluated the quality of the fragrances sold by Coty bearing the Asserted Marks").

### 3. Brand Owner Plaintiffs' participation in discovery

Cosmopolitan complains that the Brand Owner Plaintiffs have together produced only two documents, the rest all having been produced by Coty, which has failed to identify which documents are produced on behalf of which Brand Owner Plaintiff. (ECF No. 96 at 11). Plaintiffs respond that in their July 22, 2019 discovery responses, they stated that the Brand Owner Plaintiffs would produce documents "to the extent . . . not otherwise produced by Coty," and Cosmopolitan never contested this response. (Id.) Plaintiffs also point to numerous documents produced on behalf of the Brand Owner Plaintiffs. (Id.)

The Court finds that, while Cosmopolitan's complaints on this issue are long overdue, it is still appropriate for Plaintiffs to identify the source of the documents in their production, that is, from which Plaintiff's custody or control each document in their production derives. Therefore, Cosmopolitan's motion to compel production from the Brand Owner Plaintiffs is GRANTED IN PART. To the extent that any documents in Plaintiffs' production was collected and produced from one of the Brand Owner Plaintiffs, Plaintiffs must separately identify such documents, either by providing Cosmopolitan with a list of the current bates numbers or by applying a separate bates-numbering convention. Cosmopolitan's request is otherwise DENIED.

### 4. Plaintiffs' sales and revenue information

In its February 5 Order, the Court directed the parties to meet-and-confer regarding Cosmopolitan's request that Plaintiffs provide summary sales and other information for each of the Brand Owner Plaintiffs' products Coty sold in the United States. (ECF No. 74 at 1; see ECF No. 77 at 25–27). Plaintiffs rejected Cosmopolitan's proposed compromise of producing this information for a two-year time period. (ECF No. 96 at 12). Cosmopolitan argues that the

requested sales information is relevant to the quality control theory that Plaintiffs are asserting. (Id. at 11–12). Plaintiffs point to Judge Pitman's prior holding that Plaintiffs' sales information is not relevant, and argue that the unit information they have already provided is sufficient. (Id. at 12).

The Court finds that Cosmopolitan has not met its burden of showing good cause why any additional information, beyond the unit sales information Plaintiffs have already produced, must be produced at this time. Accordingly, Cosmopolitan's request that Plaintiffs be compelled to produce additional sales and revenue information is DENIED.

### 5. Identification of relevant products

Pursuant to the February 5 Order, Plaintiffs were required to "identify products that bear the asserted production codes." (ECF No. 74 at 1). Although Plaintiffs have produced a document that "lists all fragrance products sold under Plaintiffs' marks that bore unique product codes each year from 2013 to 2019," Cosmopolitan complains that Plaintiffs refuse to "identify which of these products bore the asserted production codes at any given time." (ECF No. 96 at 12) (internal citation omitted). Plaintiffs reiterate that the document they have identified (COTY6037)[4] contains the information Cosmopolitan is seeking. (Id.)

Cosmopolitan has not demonstrated a basis on which to conclude that Plaintiffs possess additional documents on this topic. The Court finds that the information Cosmopolitan is seeking is better addressed through questions during deposition testimony, during which Plaintiffs' witnesses may be asked about COTY6037, how it was prepared, how it was kept in the ordinary course of business, the sources of information it reflects, and "which . . . products

---

[4] Plaintiffs reference the document as COTY6037, while Cosmopolitan references the document as COTY0006037. Because Plaintiffs produced the document, the Court uses their numbering.

bore the asserted production codes at any given time." (ECF No. 96 at 12). Accordingly, Cosmopolitan's request that Plaintiffs be compelled to provide further documents on this topic, at this time, is DENIED.

### 6. Improper designations under the Protective Order

Cosmopolitan complains that Plaintiffs have over-designed documents as "Highly Confidential-Attorneys' Eyes Only" to conceal damaging admissions and impede Cosmopolitan's ability to prepare its defense. (ECF No. 96 at 12). Plaintiffs respond that the Protective Order contemplated use of three tiers of confidentiality, and their designations are appropriate. (Id. at 13).

The parties appear to have submitted a few, but not all, of the documents whose designation is disputed. Accordingly, the parties are ORDERED to meet-and-confer as to the documents whose designation is disputed, and if, by July 1, 2020, any disputed documents remain, the parties are directed to submit redacted and unredacted versions of those documents for in camera review by the Court.

### 7. Date for completion of Plaintiffs' document production

In the parties' Motion, Plaintiffs stated that they would complete their document production by June 15, 2020. (ECF No. 96 at 14). Accordingly, the parties are ORDERED to meet-and-confer and jointly file an amended proposed case management plan by July 1, 2020.

### III.     CONCLUSION

For the reasons set forth above, the Court rules on each of the issues raised in the Motion as follows:

1. Plaintiffs' request that Cosmopolitan be compelled to provide information concerning its sales of Non-Decoded Products is DENIED.

2. To the extent it has not done so already, Cosmopolitan must produce to Plaintiffs information sufficient to show sales of Decoded Products after November 29, 2018, when this action commenced, including sales of any Decoded Products since Plaintiffs' inspection of Cosmopolitan's facility.

3. Plaintiffs' request that Cosmopolitan be required to amend its responses to the RFAs is DENIED.

4. Plaintiffs' request for a second inspection of Cosmopolitan's facility is DENIED.

5. Plaintiffs' request that Cosmopolitan be compelled to revise or supplement its document responses, production, and interrogatory responses concerning the Individual Defendants is DENIED.

6. Cosmopolitan's request that Plaintiffs produce the Marc Jacobs Agreement is GRANTED.

7. The parties must meet-and-confer in good faith in an attempt to reach an agreement as to the redaction and classification status of the Six Agreements, and if, by **Wednesday, July 1, 2020**, they are unable to reach agreement as to some or all of the Six Agreements, they must jointly submit the disputed agreements, with and without redactions, to the Court for in camera review.

8. Cosmopolitan's request that the Brand Owner Plaintiffs be compelled to provide substantive responses to interrogatories numbered 2–10 is GRANTED.

9. Cosmopolitan's motion to compel production from the Brand Owner Plaintiffs is GRANTED IN PART. To the extent that any document in Plaintiffs' production was derived from the custody or control of one of the Brand Owner Plaintiffs, Plaintiffs must separately identify such documents, either by providing Cosmopolitan with a list of the current bates numbers or by applying a separate bates-numbering convention. Cosmopolitan's request is otherwise DENIED.

10. Cosmopolitan's request that Plaintiffs be compelled to produce additional sales and revenue information is DENIED.

11. Cosmopolitan's request that Plaintiffs be compelled to provide further documents identifying products that bear the asserted production codes is DENIED.

12. The parties are ORDERED to meet-and-confer as to the documents whose confidentiality designation is disputed, and if, by **Wednesday, July 1, 2020**, any disputed documents remain, the parties are directed to submit redacted and unredacted versions of the documents for in camera review by the Court.

13. The parties are directed to meet and confer and jointly file an amended proposed case management plan by **Wednesday, July 1, 2020**.

The Court notes that it granted the parties' request to seal the Motion and the parties may have discussed confidential material during the conference. Therefore, the parties are reminded to request, if necessary, that the transcript be filed under seal.

The Clerk of Court is respectfully directed to close ECF No. 96.

Dated: New York, New York
June 18, 2020

_____
SARAH L. CAVE
United States Magistrate Judge